United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, | No. C 11-80209 CRB |
| Movant, | **ORDER DENYING MOTION TO QUASH** |
| v. | |
| U.S. SECURITIES AND EXCHANGE COMMISSION, | |
| Respondent. | |

This Motion arises from an SEC investigation of a suspected "pump and dump" stock scheme.[1] At some time prior to the filing of this case, the SEC issued a subpoena to Google that required disclosure of the identity of the holder of the email account jeffreyhooke@gmail.com. Google notified the anonymous account holder John Doe ("Doe") about the subpoena, and he moved to quash. Magistrate Judge Vadas denied the motion. Doe has moved this Court for de novo determination of Judge Vadas's order.

The Court finds the motion suitable for determination on the papers. Therefore, the hearing is VACATED. For the reasons set forth below, the motion to quash is DENIED.

**I.    BACKGROUND**

On August 1, 2011, Google notified Doe at the email address in question that it had received an administrative subpoena from the SEC. Motion for De Novo Determination of

---

[1] There are three motions to quash before the Court in three related cases: Case Nos. 11-80184, 11-80209, and 11-80209. The facts are nearly identical in all three motions.

Dispositive Matter Referred to Magistrate Judge (dkt. 21) at 2. The subpoena requires that Google identify Doe to the SEC and produce all communications between Doe and Google. Id. at 2-3.

The SEC has reason to believe the email address at issue may have been used to tout stock for "Jammin Java Corp." as part of a pump and dump scheme. See Declaration of Kyle P. de Jong in Opp'n to Motion to Quash ("de Jong Decl.") (dkt. 8-1) ¶ 8. "Pump and dump schemes generally 'involve the touting of a company's stock (typically microcap companies) through false and misleading statements to the marketplace. After pumping the stock, fraudsters make huge profits by selling their cheap stock into the market.'" SEC Opp'n to Motion to Quash (dkt. 8) at 1-2 (quoting United States v. Zolp, 479 F.3d 715, 717 n.1 (9th Cir. 2007)).

On August 18, 2011 Doe moved to quash the subpoena. See Motion to Quash Administrative Subpoena (dkt. 1). On September 2, 2011, this Court related this case with two other cases also featuring motions to quash nearly identical subpoenas in the Jammin' Java investigation. See Order Relating Cases (dkt. 11). The Court referred the cases to the court of Magistrate Judge Vadas for discovery. See Order Referring Cases (dkt. 12). On October 4, 2011, Judge Vadas denied the motion to quash. See Order Denying Motion to Quash (dkt. 20). On October 7, 2011, Doe filed a motion for de novo determination of the magistrate order. See Mot.

**II.    LEGAL STANDARD**

The parties disagree as to the applicable legal standard.

Movant directs the Court to Federal Rule of Civil Procedure 72(b)(3), which provides for de novo review of dispositive magistrate orders. Upon review of a dispositive magistrate order, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition. . . ." Fed R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1)(C) ("[a] judge of the court shall make a de novo determination of those portions of the [magistrate's] report or specified proposed findings or recommendations to which

2

**United States District Court**
For the Northern District of California

objection is made"). The Federal Magistrates Act, 28 U.S.C. § 631 *et seq.*, lists eight types of dispositive motions, including motions for summary judgment, and not including motions to quash. "[A]ny motion not listed, nor analogous to a motion listed in this category, falls within the non-dispositive group . . . ." Maisonville v. F2 Am., Inc., 902 F.2d 746, 748 (9th Cir. 1990). Movant argues that the motion to quash is analogous to a motion for summary judgment because it "disposed entirely of Doe's sole claim and was based on affidavits submitted by the parties." Reply (dkt. 24) at 2. In Movant's view, the order "disposes of the sole issue in this miscellaneous case: whether Google must comply with the SEC's subpoena." Mot. at 1 n.1.

The SEC urges the Court to apply the clear error standard of Federal Rule of Civil Procedure 72(a), which governs district court review of <u>nondispositive</u> magistrate orders. Fed. R. Civ. P. 72(a). The SEC argues that this is a nondispositive order because motions to quash are not included in the list of eight "dispositive motions" in the Federal Magistrates Act. Opp'n at 1-2.

Because the order denying the motion to quash disposed of the sole issue in the case, the Court finds that the magistrate order was dispositive. Thus, the Court considers de novo those portions of the magistrate's disposition that have been properly objected to. See Fed R. Civ. P. 72(b)(3).

### III. DISCUSSION

Doe objects to the magistrate order on three grounds. First, he[2] argues that the magistrate judge incorrectly found that his "right to free speech was not implicated by the subpoena." Mot. at 3-4. Second, Doe argues that the magistrate judge "erred in concluding that discovering Doe's identity was rationally related to a compelling governmental interest." Mot. at 4. Third, Doe argues that the magistrate judge "erred by failing to apply the Anonymous Online Speakers test." Mot. at 4-5 (citing In re Anonymous Online Speakers, – F.3d –, 2011 WL 61635 (9th Cir. Jan. 7, 2011)).

//

---

[2] The Court uses male pronouns based on Doe's selection of the pseudonym "John."

3

### A. Doe Articulated a Free Speech Interest

An individual who believes that an administrative subpoena issued during an investigation will infringe his First Amendment rights must make a "prima facie showing of arguable first amendment infringement." Brock v. Local 375, Plumbers Int'l Union, 860 F.2d 346, 350 (9th Cir. 1988) (citing Buckley v. Valeo, 424 U.S. 1, 66 (1976)). A prima facie showing requires "objective and articulable facts, which go beyond broad allegations or subjective fears." Id. at 350 n.1. The Ninth Circuit has recognized that anonymous speech on the internet is a protectable First Amendment right: "[a]lthough the Internet is the latest platform for anonymous speech, online speech stands on the same footing as other speech – there is no basis for qualifying the level of First Amendment scrutiny that should be applied to online speech." Anonymous Online Speakers, 2011 WL 61635 at *2. In Anonymous Online Speakers, the Court assumed a free speech interest on the parts of anonymous online speakers, then proceeded to find that the district court did not clearly err in nonetheless denying the speakers' motions to quash civil subpoenas that would identify them.

Here, Doe has chosen not to use his real name or publish his identifying information in connection with the email address, in order to protect his privacy. Declaration of John Doe in Support of Motion to Quash ("Doe Decl.") (dkt. 4) at 4. He uses the email address "to publish his opinions pseudonymously on the Internet." Memorandum in Support of Motion to Quash (dkt. 2) at 3. This suffices as a First Amendment interest. See Anonymous Online Speakers 2011 WL 61635 at *2.

The SEC argues that Doe does not explain the nature of his alleged anonymous speech, nor how the SEC's confidential request for subscriber information infringes upon that speech.[3] Opp'n at 3. This argument is unavailing because it is conceivable that Doe intended to keep his identity secret from the entire world, including the SEC, so Google's

---

[3] Doe might have argued, for example, that the anonymity of his subscriber information is foundational to the rest of his anonymous online speech, such that the online speech would be entirely chilled by the specter of even a confidential federal agency subpoena of the subscriber information. Although Doe does not go this far, his general averment that he wanted to remain anonymous seems to qualify the speech as protected under the Ninth Circuit's conception of anonymous speech, recognized in Anonymous Online Speakers. See 2011 WL 61635 at *2.

4

1  compliance with the subpoena would threaten his speech interest at least to some extent.
2  That the SEC investigation is confidential is not determinative of whether Doe has
3  established a free speech interest in this step of the analysis. Confidentiality only becomes
4  relevant in the next step, to determine whether the SEC chose the least restrictive means to
5  pursue a counterbalancing interest.

6  The SEC further argues that because Doe voluntarily provided the subscriber information to Google when he created his email account, he has failed to show any protected First Amendment interest in it. The SEC cites a district court opinion to assert that "customers and subscribers do not have standing to challenge a subpoena that only requests subscriber identifying information." SEC's Opp'n to Motion to Quash (dkt. 8) at 5 (citing In re § 2703(d) Order, 787 F. Supp. 2d 430, 437-38 (E.D. Va. 2011)). This argument fails in light of Anonymous Online Speakers, in which the Ninth Circuit recognized a protectable speech interest in ISP subscriber information. 2011 WL 61635 at *2. Thus, Movant has articulated a free speech interest in the subscriber information.

### B. The SEC Responded With a Compelling Governmental Interest

If a movant makes a prima facie showing of First Amendment infringement, the burden shifts to the government to show (1) "that the information sought through the subpoenas is rationally related to a compelling governmental interest," and (2) "the government's disclosure requirements are the least restrictive means of obtaining the desired information." Brock, 860 F.2d at 350 (quotations omitted).

The Exchange Act empowers the SEC to "make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of this chapter [or] the rules or regulations thereunder" and to demand to see any papers "the Commission deems relevant or material to the inquiry." 15 U.S.C. §§ 78u(a), (b). The SEC need not offer evidence that the owner of an email address could be culpable of a crime in order to acquire the requested information. See S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 745 (1984) (noting that the SEC "often undertakes investigations into suspicious securities transactions without any knowledge of which of the

5

1 parties involved may have violated the law," for example, when trading activity suggests
2 insider information may have been used but the SEC "may have no idea which (if any) of the
3 thousands of purchasers had improper access to insider information"); see also United States
4 v. Morton Salt, 338 U.S. 632, 642-43 (1950) (a federal agency "can investigate merely on the
5 suspicion that the law is being violated, or even just because it wants assurance that it is not"
6 and is not precluded from engaging in "fishing expeditions" in the same manner litigants in
7 courts are). The SEC need only show that the information it seeks is relevant to its
8 investigation of a potential violation – and when assessing the validity of an agency
9 subpoena, "the notion of relevancy is a broad one." EEOC v. Elrod, 674 F.2d 601, 613 (7th
10 Cir. 1982). An administrative subpoena will survive a relevancy challenge as long as the
11 information requested "touches a matter under investigation." Id. at 613 (internal quotation
12 omitted).

13 The SEC has satisfied its burden of showing both the existence of a compelling
14 governmental interest and that the agency is using the least restrictive means of pursuing that
15 interest. In the course of its investigation the SEC identified Movant's email address as one
16 that was potentially used by an individual involved in the fraudulent scheme, and it issued an
17 administrative subpoena to identify that individual. See De Jong Decl. ¶ 10. The identity of
18 a suspected violator of federal securities laws "touches" the SEC's Jammin Java
19 investigation and is thus relevant to the compelling governmental interest of law
20 enforcement. Elrod, 674 F.2d at 613. By only requesting Doe's identifying information and
21 the limited communications between Google and Doe, the SEC has pursued the least
22 restrictive means of pursuing that governmental interest.

23 The government has thus met its burden under the Brock burden shifting framework.
24 The compelling governmental interest in disclosure outweighs Doe's private interest in
25 anonymity.

26     **C.**     **The Brock Burden Shifting Framework is the Correct Analysis**

27 Movant contends that the SEC must furnish "evidence sufficient to defeat a motion for
28 summary judgment" in order to pursue the subpoena. Mot. at 5 (quoting Anonymous Online

6

1 Speakers, 2011 WL 61635 at *14-16). He asserts that Anonymous Online Speakers
2 overturned Brock, a case that set forth the well-established First Amendment analysis of
3 agency-issued subpoenas. See Brock, 860 F.2d 346 at 350 (citing Buckley, 424 U.S. at 66).
4 Mot. at 5.

5      In Anonymous Online Speakers, a civil case among private parties, the Ninth Circuit
6 found that there was no clear error in a district court order for discovery of the identities of
7 five individuals alleged to have made defamatory comments about the Plaintiff on the
8 internet, where the district court had required the party seeking the information to produce
9 "evidence sufficient to defeat a motion for summary judgment," before granting the
10 subpoena. Anonymous Online Speakers, 2011 WL 61635 at *14-16.

11      The evidence sufficient to defeat a motion for summary judgment standard has never
12 been applied in the context of an investigative subpoena issued by a government agency. As
13 it stands, disclosure of identifying account information provided to a third party is
14 "routinely" ordered by courts. In re § 2703(d) Order, 787 F. Supp. 2d at 437-38 (freedom of
15 association does not shield persons from cooperating with legitimate government
16 investigations, and routine compelled disclosure of non-content information that customer
17 voluntarily provided to service provider does not form basis for First Amendment claim); see
18 also London v. Does 1-4, 279 F. App'x 513, 515 (9th Cir. 2008) (affirming denial of motion
19 to quash civil subpoena to ISP to reveal owner of email accounts because "exposure of some
20 identifying data does not violate the First Amendment").

21      Anonymous Online Speakers did nothing to change or overturn the analysis of
22 agency-issued subpoenas – and the Brock burden shifting framework thus remains the rule –
23 for three reasons.

24      First, in speech cases the balancing of two private interests has long differed from the
25 balancing of a private interest against a compelling governmental interest. As stated in
26 Brock, "[t]he Supreme Court has recognized that some governmental interests are
27 sufficiently compelling to outweigh the infringement of first amendment rights." Brock, 860
28 F.2d at 350 (emphasis added) (quoting Buckley, 424 U.S. at 66 (further quotation omitted)).

7

1 Thus, Brock sets forth a framework for courts to apply where a government interest runs up
2 against a private interest. Brock, 860 F.2d at 350.

3 In Anonymous Online Speakers the Ninth Circuit did not apply the Brock burden
4 shifting framework not because it was overturning Brock, but rather because there was
5 simply no government interest at issue. The Court concluded that the district court
6 "appropriately considered the important value of anonymous speech balanced against a
7 party's need for relevant discovery in a civil action." Anonymous Online Speakers, 2011
8 WL 61635 at *7 (emphasis added). The Court further noted that various circumstances
9 warrant differing analyses: "The right to speak, whether anonymously or otherwise, is not
10 unlimited, however, and the degree of scrutiny varies depending on the circumstances . . . ."
11 Id. at *2. Here, Doe ignores the varying degrees of scrutiny the Ninth Circuit recognizes in
12 Anonymous Online Speakers. He cites no caselaw to support the notion that the First
13 Amendment balancing test in a motion to quash a statutorily authorized administrative
14 subpoena – issued pursuant to a legitimate criminal investigation – should automatically
15 come out as it has in a private civil discovery dispute.[4]

16 Second, the Ninth Circuit in Anonymous Online Speakers applied the clear error
17 standard to find that the trial court did not err in quashing civil subpoenas. 2011 WL 61635
18 at *6-7. The Court did not announce a new rule of law; rather it stated that the trial court's
19 quashing of a subpoena in the circumstances of the underlying case was not clearly
20 erroneous.

21 Third, it is unlikely that the Ninth Circuit meant for Anonymous Online Speakers to
22 set forth a standard that would cut off the investigative legs of federal crime enforcement
23 agencies. Applying the "evidence sufficient to defeat a motion for summary judgment"

---

[4] Movant cites N.L.R.B. v. Midland Daily News, 151 F.3d 472, 475 n.3 (6th Cir. 1998), a case the Ninth Circuit cited in Anonymous Online Speakers, for the proposition that where anonymous speech is at issue, there should be no distinction between the analysis of a motion to quash an agency subpoena and the analysis of a private civil discovery dispute. Case No. 11-80184 Mot. at 3. However, the dispositive issue in that case was whether the agency had demonstrated a compelling governmental interest to overcome the private interest in anonymous speech, not whether anonymous speech is categorically shielded from the subpoena powers of federal agencies. Midland Daily News, 151 F.3d at 475 n.3.

1 standard to an SEC investigative subpoena would force the SEC to prove that a person
2 committed securities fraud before the agency could even seek the identity of that person.
3 The standard would effectively declare the Exchange Act, 15 U.S.C. §§ 78u(a)-(b)
4 unconstitutional insofar as it allows for discovery of the identity of anonymous speakers who
5 are suspected of crimes. Movant's reading of <u>Anonymous Online Speakers</u> is too broad in
6 this regard.

Thus <u>Brock</u> continues to control the First Amendment analysis in the agency subpoena context, and the evidence sufficient to defeat summary judgment standard is inapplicable.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the motion to quash.

**IT IS SO ORDERED.**

Dated: November 17, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE